# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS MENDOZA PEREZ,<br><br>              Plaintiff,<br><br>  v.<br><br>MARGARET MIMS, Warden, Fresno County Jail,<br><br>              Defendant. | Case No. 1:16-cv-00447-DAD-SKO<br><br>**FINDINGS AND RECOMMENDATION THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE DENIED** |

## I. INTRODUCTION

On May 15, 2015, a warrant issued for Petitioner's arrest pursuant to the government's complaint for provisional arrest under the extradition treaty between the United States and Mexico. (*See United States of America v. Elias Mendoza Perez*, No. 1:15-mj-00074-SKO, Docs. 1; 2.) The United States submitted a formal request for Petitioner's extradition based on a pending charge of homicide in the Mexican state of Michoacan. (*See id.*, Docs. 30-31.) On February 29, 2016, a formal extradition hearing was held before United States Magistrate Judge Barbara M. McAuliffe. (*Id.*, Doc. 37 (minute order).) On March 11, 2016, the Court issued a Certification of Extraditability and Order of Commitment based on a finding of probable cause and ordered Petitioner's extradition to Mexico. (*Id.*, Doc. 38 (Certification).)

On March 31, 2016, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, thereby postponing the Secretary of State's decision on whether to

transfer custody to the Government of Mexico until resolution of the instant motion. (Doc. 1 (Petition for Writ of Habeas Corpus) ("Petition").) Petitioner raises two claims in the Petition. He first contends that his extradition to Mexico would violate the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("the Convention"), 1465 U.N.T.S. 85, because he has a "credible fear" that he will be tortured and killed if he is extradited to Mexico. (Pet., p. 3.) He also contends that regardless of whether the Convention applies, an exception to extradition on "humanitarian grounds" should be applied to his specific case. (*Id.*) The United States of America and Respondent Margaret Mims, on behalf of the Government of Mexico, filed a response to the petition on May 2, 2016 (Doc. 11), and Petitioner filed a traverse on May 31, 2016. (Docs. 16-18.) It is Petitioner's petition for writ of habeas corpus which is pending before the Court.

## II.     LEGAL STANDARD

### A.     Extradition Proceedings

Extradition is "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames,* 184 U.S. 270, 289 (1902). Extradition from the United States is governed by 18 U.S.C. § 3184, which "confers jurisdiction on any justice or judge of the United States or any authorized magistrate to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation." *Cornejo-Barreto v. Seifert,* 218 F.3d 1004, 1009 (9th Cir. 2000), *overruled on other grounds by Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012).

"The extradition process is ordinarily initiated by a formal request from a foreign government to the Department of State, which along with the Department of Justice, evaluates whether the request is within the scope of the relevant extradition treaty between the United States and the requesting nation." *Barapind v. Reno,* 225 F.3d 1100, 1105 (9th Cir. 2000); *Cornejo-Barreto,* 218 F.3d at 1009. "Once approved, the United States Attorney for the judicial district where the person sought is located files a complaint in federal district court seeking an arrest warrant for the person sought." *Barapind,* 225 F.3d at 1105; *Cornejo-Barreto,* 218 F.3d at 1009.

A hearing is then held before a federal judge to determine whether the offense is extraditable and probable cause exists to sustain the charge(s). *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005) ("*Prasoprat*"); *Cornejo-Barreto*, 218 F.3d at 1009. If these requirements are met, the magistrate judge must certify to the Secretary of State that the individual is extraditable. 18 U.S.C. § 3184.

The extradition magistrate judge "has no discretionary decision to make." *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997). Rather, "[i]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is required to certify the individual as extraditable to the Secretary of State and to issue a warrant." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003). The Secretary of State then determines in his discretion whether the individual will be surrendered. *Id.* (citing *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997); 18 U.S.C. § 3186).

**B.     Federal Review of Extradition Proceedings**

The decision to certify a person as extraditable is not subject to direct appeal but may be challenged collaterally through habeas corpus review. *Barapind*, 400 F.3d at 748 n.5; *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1402 (9th Cir. 1988). "The scope of habeas review of an extradition order is severely limited." *Artukovic v. Rison*, 784 F.2d 1354, 1355-56 (9th Cir. 1986). Specifically, the court may only consider the following: (1) whether the extradition judge had jurisdiction to conduct the proceeding; (2) whether the extradition court had jurisdiction over the individual sought; (3) whether the extradition treaty was in force; (4) whether the crime fell within the treaty's terms; (5) whether there was probable cause that the individual sought committed the crime; and (6) whether the crime was within the political offense exception. *See Cornejo-Barreto*, 218 F.3d at 1009-10; *Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999); *Emami v. U.S. District Court*, 834 F.2d 1444 (9th Cir. 1987); *see also Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (stating that "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty").

//

## III. DISCUSSION

Petitioner does not dispute that the Court correctly found the following: it has jurisdiction over the proceedings and over Petitioner; there is a valid extradition treaty in effect between the United States and the Government of Mexico and the treaty is in full force and effect; the offense for which Petitioner is sought, homicide, is an extraditable offense covered by the treaty between the United States and Mexico; and there is probable cause to believe that Petitioner, the same person identified in the extradition request from the Government of Mexico, committed the offense for which extradition is sought. (*See generally* Pet.; *see also United States of America v. Elias Mendoza Perez*, No. 1:15-mj-00074-SKO, Doc. 38.) Rather, Petitioner seeks to prevent his extradition because he fears being tortured and killed if extradited to Mexico, thus violating the Convention Against Torture, and seeks to carve out a first-time exception to extradition on "humanitarian grounds." (Pet., p. 3.)

For the reasons that follow, it is RECOMMENDED that Petitioner's petition for writ of habeas corpus be DENIED.

### 1. Petitioner's Claim that His Extradition Will Violate His Rights under the Convention Against Torture is Not Ripe for Review

The ripeness doctrine keeps federal courts from deciding cases prematurely and protects federal courts "from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *See United States v. Rivera*, 613 F.3d 1046, 1049, 1050 (11th Cir. 2010). Petitioner contends that his extradition to Mexico would violate the Convention Against Torture because he "has a credible fear that he will be tortured and killed if he is extradited to Mexico." (Pet., p. 3.) However, a fugitive fearing torture does not have a ripe habeas claim unless and until the Secretary of State makes a final decision to surrender the fugitive to the requesting party. *See Yacaman Meza v. U.S. Attorney General*, 693 F.3d 1350, 1357 (11th Cir. 2012) ("until the Secretary decides to surrender [the fugitive], [the fugitive's] claim that he should not be extradited based on the Convention Against Torture is not ripe for our review"), *cert. denied*, 133 S. Ct. 933 (2013). *See also Trinidad y Garcia*, 683 F.3d at 960-61 (reviewing Secretary's decision to extradite for compliance with her statutory and regulatory obligations, including "binding

4

domestic law" such as the Convention Against Torture); *Prasoprat*, 421 F.3d at 1016 n.5 ("the rule of non-inquiry does not prevent an extradite who fears torture upon surrender to the requesting government from petitioning for habeas corpus review of the Secretary of State's *decision* to extradite him") (emphasis added). Here, the Secretary has not yet determined whether to surrender Petitioner.

Petitioner's argument that the Convention Against Torture bars his extradition "is not ripe for adjudication . . . [because] it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Petitioner assumes the Secretary will surrender him to Mexican officials, but there is no evidence in the record that the Secretary has decided to comply with the extradition request. The Secretary may still find it more likely than not that Petitioner will be tortured in Mexico and refuse to surrender him, or he may find it *less* likely than not that Petitioner will be tortured in Mexico and choose to extradite him. *See* 22 C.F.R. § 95.2(b). Or the Secretary may decide to extradite Petitioner *even if* he decides he will be tortured. *Cf.* 18 U.S.C. § 3186. The Secretary may also decide that Petitioner will not face torture, but decide not to comply with the extradition request for other reasons. *Cf. id.* In the light of these different possibilities, only one thing is certain: Petitioner has "ask[ed] us to resolve [his] dispute prematurely." *Rivera*, 613 F.3d at 1050. The Court does not have jurisdiction to do so.

### 2. Petitioner's Argument that Extradition Would Violate the Convention Against Torture is Outside the Scope of this Court's Habeas Review

Similarly, habeas review of Petitioner's claims of *future* mistreatment at the hands of a foreign state are outside the scope of this Court's habeas review. *Artukovic*, 784 F.2d at 1355-56 (stating that "[t]he scope of habeas review of an extradition order is severely limited").

Respondent directs the court to the judicial rule of non-inquiry, which ordinarily "precludes [judges] from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request." (Resp., pp. 5-8 (citing *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 829 (11th Cir. 1993); *Munaf v. Geren*, 553 U.S. 674, 700 (2008)).) Respondent contends this Court is "barred" from reviewing Petitioner's claims under the Convention Against

Torture by the rule of non-inquiry (*id.*); however, the rule of non-inquiry only limits the scope of this Court's habeas review. *Trinidad y Garcia*, 683 F.3d at 956 (stating that the rule of non-inquiry "implicates only the *scope* of habeas review; it does not affect federal habeas *jurisdiction*") (italics in original). Were there evidence the Secretary of State had failed to comply with his obligations to review and analyze information relevant to Petitioner's case prior to signing the surrender warrant, *see* 22 C.F.R. § 95.3(a), the rule of non-inquiry would not preclude Petitioner from seeking redress in this Court. *Trinidad y Garcia*, 683 F.3d 952.

The Convention Against Torture is a treaty signed and ratified by the United States, 136 Cong. Rec. 36,198 (1990), and implemented by statute as part of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231 note. That statute declares it "the policy of the United States not to . . . extradite . . . any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id*. The statute requires that "the appropriate agencies . . . prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture." *Id*.

The Convention and its implementing regulations are binding domestic law, which means that the Secretary of State must make a torture determination before surrendering an extraditee who makes a claim under the Convention. FARRA and its regulations generate interests cognizable as liberty interests under the Due Process Clause. *Trinidad y Garcia*, 683 F.3d at 956-57 (citing U.S. Const. amend. V; *Mathews v. Eldridge*, 424 U.S. 319 (1976); and *Goldberg v. Kelly*, 397 U.S. 254 (1970)). As noted by the Ninth Circuit:

> The process due here is that prescribed by the statute and implementing regulation: The Secretary must consider an extraditee's torture claim and find it not "more likely than not" that the extraditee will face torture before extradition can occur. An extraditee thus possesses a narrow liberty interest: that the Secretary comply with h[is] statutory and regulatory obligations.

*Trinidad y Garcia*, 683 F.3d at 957 (quoting 22 C.F.R. § 95.2). Petitioner's "liberty interest under the federal statute and federal regulations entitles him to *strict compliance* by the Secretary of State with the procedure outlined in the regulations." *Id.* (emphasis added). As discussed above, however, the Secretary has not yet made *any* decision as to whether Petitioner will actually be

extradited. There is therefore no record before the Court regarding whether the Secretary *will have complied* with his obligations under the aforementioned treaty, statute, and regulations when he *at some point in the future* decides whether to surrender Petitioner.

Review of the extradition magistrate judge's decision on this ground is therefore outside the scope of this Court's habeas review. *See Fernandez*, 268 U.S. at 312 (stating that "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty"); *Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980) (stating that "the degree of risk to [petitioner]' s life from extradition is an issue that properly falls within the exclusive purview of the executive branch" and that "'[r]eview by habeas corpus . . . tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide'") (quoting *Wacker v. Bisson*, 348 F.2d 602, 606 (5th Cir. 1965)).

### 3. Even Were Petitioner's Claim Ripe for Review, There is No "Humanitarian Exception" to the Rule of Non-Inquiry and this Court Should Not Create One

Petitioner contends that the so-called "humanitarian exception" to the "rule of non-inquiry" should be applied to his case to prevent his extradition to Mexico because, if extradited, he will likely be tortured and killed. (Pet., p. 3; Trav., pp. 2-3.) The "humanitarian exception" would authorize an inquiry into the procedures or treatment an extraditee would encounter upon surrender where those procedures or punishment are "antipathetic to a federal court's sense of decency." *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851 (1960).

Even were this Court to find Petitioner's claim under the Convention Against Torture ripe for review, this issue is not cognizable on habeas corpus. An extradition magistrate judge lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country. *See Gallina*, 278 F.2d at 78 (denying habeas corpus on the strength of established authority holding that the federal courts may not "inquire into the procedures which await the [fugitive] upon extradition"); *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990) ("consideration of the procedures that will or may occur in the requesting country is not within the

7

purview of a habeas corpus judge"); *see also Emami*, 834 F.2d at 1452-53 (the "extraditing court will generally not inquire into the procedures or treatment which await a surrendered fugitive in the requesting country").

Although the dictum in *Gallina* -- that a habeas corpus court may consider the procedures awaiting a fugitive upon extradition to the requesting country -- has been widely quoted, including by the Ninth Circuit, no court appears to have actually applied that decision as a basis for denying extradition. *See, e.g., Mainero*, 164 F.3d at 1210 (noting that "to date no court has ever denied extradition based on a fugitive's anticipated treatment in the requesting country"); *Lopez–Smith v. Hood*, 121 F.3d 1322, 1326-27 (9th Cir. 1997) (discussing in dicta the possibility of the humanitarian exception); *Emami*, 834 F.2d at 1452-53 (noting that a humanitarian exception to extradition might someday be articulated by the Ninth Circuit); *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983) (same).

The Ninth Circuit has made it clear that

> . . . We have long adhered to the rule of non-inquiry that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. [Citations omitted]. The rule of non-inquiry is based on the principle that the Secretary of State's exercise of discretion regarding whether to extradite an individual may be based not only on "considerations individual to the person facing extradition" but "may be based on foreign policy considerations instead." [Citation omitted]. "The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States." [Citations omitted].

*Prasoprat*, 421 F.3d at 1016; *see also Blaxland*, 323 F.3d at 1208 (stating that, "judges generally 'refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely'"); *Barapind*, 225 F.3d at 1105-06 (stating that "[m]any courts, including ours, have adhered to the general rule that it is not the role of the courts, but rather the Secretary of State, to determine whether extradition should be denied on humanitarian grounds").

Though the Ninth Circuit has, on occasion, cited the *possibility* of a humanitarian exception to extradition, such an exception has never been created in this *or any other* Circuit in

8

the half-century since *Gallina* was decided.  *Prasoprat*, 421 F.3d at 1016; *see Cornejo-Barreto*, 218 F.3d at 1010 (stating that "[o]ur research failed to identify any case in which this theoretical exception has been applied" and declining to consider it); *see also Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999); *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 830 n.10 (11th Cir. 1993).  It is well-settled in this Circuit that "[a]n extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country."  *Prasoprat*, 421 F.3d at 1016 (alteration in original) (internal quotation omitted).  The extradition magistrate's authority is "constrained by statute and caselaw to a narrow inquiry, such that the magistrate judge does not have any discretion to exercise.  Once the magistrate judge determines that the crime is extraditable and there is probable cause to sustain the charge, 'it is the Secretary of State, representing the executive branch, who determines whether to surrender the fugitive.'"  *Id.*, 421 F.3d at 1016 (quoting *Blaxland*, 323 F.3d at 1208).

Even the Second Circuit, which decided *Gallina*, has since cited *Gallina* for the proposition that the State Department -- not the judiciary -- is the proper authority to inquire into procedures that await the fugitive in the requesting country.  *See Sindona*, 619 F.2d at 174-75 (quoting *Gallina*, 278 F.2d at 78, ass holding that the federal courts *may not* "inquire into the procedures which await the [fugitive] upon extradition").  Contrary to Petitioner's contention,

> . . . Sound policy reasons support rejection of the *Gallina* dictum.  The humanitarian exception would require courts to decide not only the legality of a particular extradition, but also the wisdom and virtue of it.  Such rule would require extensive judicial exploration into the social conditions and legal system of a foreign country.  This task is best left to the Secretary of State.

*Prasoprat v. Benov*, 294 F. Supp. 2d 1165, 1172 (C.D. Cal. 2003) ("*Benov*"), *aff'd*, *Prasoprat*, 421 F.3d 1009 (citing *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997)).

Petitioner "urges this Court to establish a humanitarian exception to extradition in this case," citing 22 C.F.R. § 95.2(a)(2) for the principle that "[e]xtraditions are prohibited in cases where the State Department concludes that it is more likely than not that the person facing extradition would be tortured."  (Trav., p. 3.)  Even were a "humanitarian exception" a legal reality, Petitioner's own citation to the Code of Federal Regulations demonstrates that the judiciary does not have the authority to revoke the certificate of extradition on humanitarian

9

grounds: it is solely within the authority of the Secretary of State, "exercising executive discretion through delegation of this authority by the President, [to] refuse to extradite a [fugitive] despite a judicial determination that extradition would be compatible with the terms of the applicable treaty.'" *Blaxland*, 323 F.3d at 1208 (quoting *Lopez-Smith*, 121 F.3d at 1326). This Court simply does not have the authority to consider foreign policy concerns and other issues that may affect the executive branch's decision whether to extradite. *See id.* (stating that "the executive branch's ultimate decision on extradition may be based on a variety of grounds, ranging from individual circumstances, to foreign policy concerns, to political exigencies").

Humanitarian claims do not give rise to habeas relief from extradition, and this Court should not overstep the clear bounds of its jurisdiction to create such an exception in this case.[1] "Again, the Department of State, *not* the district court, is best suited and uniquely empowered to determine the advisability of extradition under the particular circumstances of this case." *Benov*, 294 F. Supp. 2d at 1172 (italics added); *Prasoprat*, 421 F.3d at 1017 (affirming *Benov* court's conclusion "that the magistrate judge did not have the authority to refuse to issue a certificate of extradition on humanitarian grounds").

### IV. CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned RECOMMENDS that the Court DENY the Petition for Writ of Habeas Corpus.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **fifteen (15) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate

---

[1] Petitioner cites to "*Prasoprat v. Benov*, 622 F. Supp. 2d 980, 988 (C.D. Cal. 2009)," in support of the creation of such an exception, asserting "the district court agreed to review but ultimately declined to grant habeas relief, finding that petitioner did not show that torture was 'more likely than not.'" (Trav., p. 4.) It is unclear whether Petitioner intended to cite *Prasapat v. Benov*, 294 F. Supp. 2d 1165 (C.D. Cal. 2003), an order on petitioner's habeas petition from a certification of extraditability, or *U.S. v. Alvarado*, 622 F. Supp. 2d 988 (E.D. Cal. 2009), an order on a criminal defendant's motion to withdraw his guilty plea.

Regardless, neither court has held that the "likelihood" of torture was dispositive to the court's jurisdiction to create a humanitarian exception to extradition. In fact, as discussed at length in these findings and recommendation, *Benov* stands for the legal position that "[a]n extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country." 294 F. Supp. 2d at 1171.

Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and filed within **seven (7) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **June 13, 2016**                             /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE

11